thank you good morning your honors and may it please the court before I begin I'd like to reserve two minutes in rebuttal if possible we'll try to watch your time but ultimately you'll be responsible okay thank you your honor the question in this case is whether trial counsel can be considered effective when she knowingly presents false testimony in support of an alibi defense and constructively prevents the defendant from testifying on his behalf where's the evidence that she knowingly presented false testimony your honor other than the petitioners own declaration in his letter to which is included in the excerpts of record he lets counsel know that he is finally willing to come clean essentially and tell her the truth about his involvement in in this crime and his presence in the cell where the killing occurred in that letter he does not mention the witness Garland and that's what respondent and the courts below took issue with they said that doesn't show that that's council is aware that Garland was going to present this false testimony but I think that is isn't that an undated letter from the petitioner that does not even mention Garland it's true it is undated it was found in trial counsel's files along with four other letters that were in the state habeas exhibits while there is no date on the on the letter in petitioners declaration which was also provided he states under penalty of perjury that all of this took place prior to trial as they were preparing for trial and essentially trial counsel had already prepared to present an alibi defense and seemed unwilling to change the approach of the defense it seems like there are a number of indications in the record and in the letter that you're talking about that he sent to mrs. trial show that he was not being truthful to mrs. trotter it seems to me that you know your your client was sometimes withholding information from his lawyer at least provided what at least in my view confusing stories of what occurred with respect to this this murder of mr. Hampton and it I think it might be fair to say that based on the uncertainty trial counsel it could have made a tactical decision to go with Garland as the alibi witness it seems like that's what the with the court below you know seems to come up with so I why why isn't that a fair reading of what happened here your honor I agree the petitioner mr. Schmaus was had a long history of drug and alcohol use was through this very traumatic experience where he was shot eight times by the loss Angeles deputy sheriffs in relation to the grand theft auto case that found him in the LA County Jail prior to this murder occurring so he was very frightened because when he was put into jail he had just had surgery to repair the gunshot wounds and then he was put into the population immediately beaten by essentially I believe it was african-american gang members who did not like his tattoos that he was white that he was put into a pod and so through all these traumatic events the past history of alcohol and drug abuse he was very frightened about coming clean with his trial counsel how did I'm not sure that helps I apologize for the length and in getting to my point here but the point is he was frightened about sharing this the actual information about his involvement in the crime with with trial counsel because he didn't want to go against any of the co-defendants cases when he finally decided to tell the truth I and I make this point in the brief in the briefs I think it's pretty clear when he's being truthful because who would admit to being in a cell where the killing occurred if they are trying to avoid a conviction so the fact so judge Gould if I could just interject to make sure you cover a point that's on my mind let's assume that he believes his counsel has put on a false witness that is the witness giving false testimony couldn't couldn't am I wrong and thinking that as a defendant he has an absolute right to insist on testifying himself and he could have testified I don't agree with that witness I was I was in the cell yes right so so you can't really blame that all on the because he had control of his ability to testify yes your honor I I understand the the question your honor's is posing is that it was up to the defendant at the time to essentially assert that right and his reason for not doing so was that trial counsel very definitively told him as was mentioned in the not to testify because they were going forward with this alibi defense and it would blow you know a large hole in the alibi defense and so mr. schmaus believed that that was it he didn't have an opportunity unfortunately as we know defendants often don't know their rights within the courtroom and don't know that they actually have a right to address the court and ask to assert their their to testify and and this was a case in which he thought trial counsel was running the defense she said no so he was then unable to and and then of course so thank you that that's a comprehensive answer to my question thank you I think there were and the letter you're talking about that I think there were at least two references that that your client made with respect to whose ultimate decision it should be on how to proceed in light of all the witnesses including Garland and hit what he was telling her I think he said ultimately it's your call to mr. Schroeder and I think it refers to it twice that you know he's gonna defer to her so it seems like that seems to reinforce that this was a trial strategy decision that he was going to yield to her so I'm not quite sure how that helps your case at this pointer but I want to hear from you you can explain that away for me again your honor I think it goes to judge Gould's point in that if if defendants really were aware of what what aspects they control or what rights they hold in the adversarial process we'd all be better off and we wouldn't see as many of these issues pop up in in these cases but as as you pointed out in the letter mr. Schmaus believed that trial counsel was steering the the case and so he left it up to her he deferred to her over and over and said you know this is your your decision but he thought that if he let her know that I was in that cell when the murder occurred that there was no way she would go on to present an alibi defense which she knew to be false let's just just assume for a moment that trial counsel committed an ethical violation by I guess suborning perjury I'm just I'm just wondering does that alone constitute deficient performance and if so what's your best authority for that well I believe that under Strickland and mix the white side it's clear that the that it's never acceptable for trial counsel to present false testimony and attempt to deceive the court if if trial counsel knows that a witness will be that she's going to present will suborn perjury she has an ethical duty to the court as an officer of the court not to present that witness and I think it's it's clear under next few white side that the Supreme Court has addressed the duty of loyalty to the client but says that that stops at that point where you're going to deceive the court and commit an ethical breach I have two questions for you if I can first question do you have any case law that supports that a defendant's right to testify can be violated as it was in this case as you allege in an indirect manner when he was not in my view actually prevented from testifying and secondly considering the other evidence presented against the petitioner how would his testimony your honor as to the first question I could not find a case directly on point that which I think is a good thing because hopefully there there aren't too many cases where trial counsel is committing an ethical breach like the one in this case but the seminal case Rock the Arkansas US Supreme Court case I think is similar in in a certain sense it was a manslaughter case where the wife shot her husband the defendant the wife underwent hypnosis to help her recollect the events and the Arkansas court held that the post hypnosis recollection was not admissible in court the Supreme Court ultimately ruled that that violated her right to testify in her in her own defense and and went on to state all the different ways in in which that right to testify is protected under the Constitution the different amendments here Mr. Schmaus was told by trial counsel that she was presenting this alibi defense so essentially he was presented from test or prevented from testifying as Judge Gould pointed out he did have the power to address the court and ask that he be able to testify one he didn't understand that right and and you know let counsel know that she was steering the ship but to there wouldn't have been I mean he was essentially constructively prevented from doing so because there wouldn't be much point in doing the DA's work for him by offering a completely different story than what was just presented by a defense counsel I would like to ask a couple questions about the plea plea bargain I know that was not part of the certified claim but it appears that you know trial counsel there's argument here that she was deficient for failing to discover that there was an error in the in the plea extended to Mr. Schmaus based on that correct and struck an assumption of the prior strike and it seems like she may have had a duty to investigate that and she didn't but I'm just trying to take that through to the next step and I wanted to hear your position on whether or not that was actually prejudicial or could establish prejudice and what's your response to that because it seems like any plea offer would have been contingent upon all the co-defendants accepting the plea so yes and your honor respondent pointed out that you know the the state court relied upon the district attorney's assertion that no formal plea offer had ever been made but I think that's really getting away from the the point that there was active sort of plea agreement negotiations going on mr. Schmaus his point was and in fact the testifying the killer in the case Robert Glenn had a plea agreement to testify against his co-defendants so there is an active sort of negotiations going on no formal offer was ever made but mr. Schmaus is assertion is that trial counsel had a duty to investigate not only what strikes he had or did not have but his mental disabilities as physical disabilities all these things that could have been presented and helped in the plea negotiations and instead really she she did not do any investigation not sure you answer my question on the prejudice but oh as far as the prejudice analysis again I think the the I believe that had she continued to negotiate with the other parties and with the district attorney they could have resolved at least a 22-year settlement as the killer Robert Glenn had agreed to and I do believe it was prejudicial not to pursue those settlement negotiations all right thank you thank you good morning your honors may it please the court deputy attorney general Douglas Wilson appearing for appellee and respondent in examining the performance prong and Strickland I think generally speaking it's safe to say that reasonably confident defense counsel are often faced with the situation where their client has told the story that they don't necessarily believe but they still have to put on a defense I don't think there is no lost or there is no law that says that I'm sorry a precedent that says that a defense counsel has to believe her client in the situation of Nick's versus white side that deals with something that's very different from what we have here that's where the defense attorney subjectively believes that their client is going to commit perjury and what they what they need to do to take care of the situation here this is not a case where defense counsel knowingly presented perjured evidence versus not presenting the truth I think as as the court pointed out that or actually you know the first version that Mr. Schmaus told starting in May 2nd 1995 to law enforcement was that he wasn't in the cell that he was never you know that he wasn't involved that continued all the way to 2000 within it was consistently telling the story to his defense counsel and on the eve of trial right around the time I wouldn't BD was representing himself was thinking about how could he explain away his fingerprints in the cell and apparently threw out the idea well maybe I'll have to tell I'll have to testify and tell the court or tell the jury that we were there so then that's when this second version came about but I think as Judge McGeough pointed out the letter was couched in tactical terms he said it's up to you you know you can pick whichever defense let's talk about the letter a little bit because I do have questions for you and I acknowledge and agree that the that it does not mention mr. Garland by name but can't we infer even without indication to mr. Garland's actual actual name that that the truth that mr. Schmaus says within the letter is clearly contrary to mr. Garland's kind of you know story of events I mean it the story in the Schmaus letter to the attorney does present a very different version of events that then what mr. Garland ended up testifying to so I mean the lawyer had to realize that I think you're right your honor that there is an inference that could be drawn from that but I think the basic question at that and the second version I think a reasonable attorney a reasonable person could really doubt the veracity of that remember appellant is saying I was in this the second version I was in the shell but I had absolutely nothing to do with the crime well when you look at the white prison gang culture and you look at how well this crime was executed how it was planned how it required three people in the cell how it required people in the cell next door to pass you know clean the clothing and and wash the meticulously clean up the cell that version of events I think a defense attorney could certainly you know so you know when we're I think you know we're really kind of stuck but our defense counsel was really kind of stuck between a rock and a hard place to you know as to what to put forward we have a statement from the prosecutor in the record do we have anything from defense counsel no your honor there's absolutely nothing from defense counsel as we pointed out in our in our briefing that any of appellants statements in his self-serving declaration dealing with the hearsay of appellants counsel has to be disregarded you know in the state court there's a pleading burden that I can't remember did you did somebody try to find mr. Trotter mr. Trotter or what what happened yes I believe hey yeah appellant was represented by habeas counsel for through from the Superior Court California Court of Appeal and California Supreme Court same counsel in her declaration she said and she attached some letters to it she said that she had contacted defense counsel and wanted to interview her with it with an investigator present and in one of the letters advised her that she should probably have counsel with her as well so apparently miss Trotter told miss Tadashi that she would answer questions in writing but wasn't willing to do a interview and then that's when miss Tadashi the habeas counsel said she didn't think that that was going to be productive and just drop the whole matter so we really have no idea what went on between yes I'm sorry if I can just ask a question related to that is there anything in the record that tells us whether there's been any bar discipline proceeding relating to this alleged suborning of perjury there's nothing in the record your honor I recall there's not there's no listing on the public website of any disciplinary action okay thank you I was just curious if you knew anything about whether or not a trial counsel ever committed an ethical violation by knowingly suborning perjury would that really said that unethical behavior by trial counsel is not per se ineffective I think we have to really look at it on a case-by-case basis and specifically here you know we're we have the 2020 hindsight where we have you know the you know we know what has occurred after trial but at this point in time when mrs. Trotter was preparing for trial she had this situation where petitioner had given her two different tactical approaches and she had and she had to pick one and we I think going to judge Gould your question earlier about the about the appellant objecting at trial it's very clear in the record that that mrs. Trotter mentioned Garland several times during jury voir dire at the very beginning and we also know that Beattie represented himself he went pro per he was represented by counsel he went back to being pro per clearly the appellant would have understood that he could communicate with the court he was very good at writing letters and so I don't think anything kept him from communicating from the court communicating with the court that he disagreed with his attorney I think ultimately they agreed to go forward with this with this defense certainly a reasonably competent attorney would have advised her client about the dangers of him testifying I wanted to talk to you about the plea bargain it seems like any effective counsel would have investigated the defendants criminal history at the time and that clearly wasn't done here and I think there's a good argument that was deficient performance my question is whether or not there's a some reasonable probability about for counsel's error in not realizing that mr. Schmoss did not have a strike which was not insignificant that the outcome would have been different for mr. Schmoss if he'd received a better plea offer I'd like for you to respond to that you are just respectfully disagree with the have a declaration from trial counsel and we don't know when she learned of the fact that he didn't have a qualifying prior strike we do know from the declaration of the prosecutor and that declaration was not submitted in the trial court it was submitted once we got to the California Supreme Court he did you think she knew at the time I mean didn't she have a duty to investigate oh absolutely she did your honor I'm just saying we don't know to with the declaration from the prosecutor he was very clear that he wanted it had to be a package deal he wanted a factual statement from all the all the parties he said that some of and I this is also on the record during the sentencing which we've attached to our further supplemental excerpts of record that some of the parties didn't want that much time some of them didn't want to give a factual basis for the plea and the prosecutor specifically said given the brutality and nature of this crime there's no way he would have ever accepted an 11-year plea he said that pretty much basically what he was left with was a plea to second-degree murder with a sentence of an indeterminate sentence of 15 years to life and I think we know from the letter that we can infer from the letter that appellant sent to the trial court and I think there was also a letter that he sent to his trial attorney actually there was a letter he sent to this trial attorney where he said that you know there's no way he's going to take 22 years and certainly there would have been no way that the appellant would have accepted an indeterminate life sentence I just I just don't see that in the cards and I don't think that you can show prejudice and the other question I wanted to ask you is what how do we review this to review this under the look-through doctrine or all these questions that are being raised or through the Richter post Richter analysis I would suggest that well especially with respect to the plea bargain issue we have evidence that was presented only in the California Supreme Court so then that's that's the prosecutor's declaration this is a different procedural situation from this court's Kennedy case where where this court said that the look-through doctrine survives post Richter but in that case we had a claim presented to the California Court of Appeal that had you know three justices that did a reasoned analysis and then it went up to the California Supreme Court and they did a silent denial here we have a very different situation that it started in the in the Superior Court where we know the Superior Court has slightly less resources than appellate courts and less time and then once we got to the California Supreme Court they asked for additional they asked for informal response from us we fully briefed all of the issues we provided many attachments to our informal response and then they were allowed to provide a reply so it's a different situation so I think you know it distinguishes it from the you know we should be applying the the Richter situation where we look at what is what is reasonable of the adjudication the last question I had and it's just more out of curiosity here it seems like the state here decided to prosecute and punish her their strategy was to give the most culpable person the least amount of time I'm just curious about that do you know anything about that I mean I know you have the person you just described it as the most brutal crime and the most person was the person responsible for the most brutal part of it got the least amount of time from what I can tell I think I think you're absolutely right when you do offers and try to build up the case you give it to the least person and build it up I have no personal knowledge I you know I had spoken to the prosecutor many many minutes like 17 years ago but I never asked him that question we know that Glenn as you as your honors points out is the most culpable person he really planned this out this was a sophisticated plan as I've as I said you know it required the three people in the cell and you know I just I can't explain that but with with just a couple of seconds I have left if I just touch on prejudice for a second given the and the the the tattoos that appellant had commemorating his his commission in this crime the statement he gave to Steve Arce admitting that he was involved I just don't see how it was reasonably probable that appellant could have expected a different outcome you know if he if he had testified the prosecution would have impeached him with all of that with all the various evidence and his prior but including his prior conviction it was not just grand theft it was actually assault with a deadly weapon on a peace officer they would have gone through again all the tenants of the Aryan Brotherhood and the Nazi lowriders they would have gone through all of his tattoos with that has the Nazi related low Nazi lowrider related tattoos I just don't see the the possibility of a seems to school has any further questions no I have no further questions I'll give you a minute to wrap up okay just quickly my colleague pointed out that defense counsel has a duty to present a defense our position will be that that duty does not include presenting a perjurious defense as far as the look for look through analysis it'll speed none a maker I would point out that the US Supreme Court heard oral argument October 30th and that case is currently pending but this court and every court except a bare majority in the 11th Circuit have continued to use the look analysis and then finally as to the prejudice analysis I agree the crime was exceedingly brutal as you know many of these prison related killings are but I think the point is if mr. Schmaus had been able to testify about his physical disabilities his mental disabilities and his presence but not participation in in the crime that could have made a difference to at least one juror thank you your honor thank you both for your arguments and presentations here today greatly appreciated the the case of Jason Schmaus versus Francisco hot gas is submitted
judges: Gould, Murguia, Zouhary